UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ANDREW MESNER,                    )
                                  )
            Plaintiff,            )
                                  )
      v.                          )      No. 2:23-cv-00252-JAW
                                  )
FIDELITY BROKERAGE SERVICES,      )
LLC, et als.                      )
                                  )
            Defendants.           )

**ORDER ON PENDING MOTIONS**

A customer of a stock brokerage firm sues the firm alleging various violations of law.  Applying United States Supreme Court and Court of Appeals for the First Circuit precedent, the Court enforces the arbitration clause of the customer's account agreement, grants a motion to compel arbitration, and dismisses the customer's complaint without prejudice.  In doing so, the Court clarifies which of the four complaints is the operative complaint, rejects the customer's Seventh Amendment claim, denies his motion for sanctions, and declines to issue a default judgment against the firm.

I.      **BACKGROUND**

A.  **Andrew Mesner's Original Complaint**

On June 22, 2023, Andrew Mesner, acting pro se, filed a complaint in this court against Fidelity Brokerage Services, LLC, and Fidelity Management 3 Research Company LLC, claiming federal question jurisdiction over the case.  *Compl.* (ECF No.

1).  In his filing, Mr. Mesner attached a twenty-two-page statement, which he referred to as his complaint.  *Id.*, Attach. 1, *A statement of Andrew S. Mesner.*

Mr. Mesner's personal statement refers to three attached exhibits. The first exhibit contains: a FINRA[1] firm profile of Fidelity Brokerage Services, LLC; correspondence from FINRA, Securities and Exchange Commission (SEC) information; an article dated June 16, 1996 from The Spokesman-Review; and an order dated January 11, 1999 from the SEC instituting proceedings in the matter of Certain Market Making Activities on NASDAQ. *Id.*, Attach. 2.

The second exhibit includes several preview order forms for the purchase of Terran Orbital Corp. in February 2023; investment account activity for Mr. Mesner's Fidelity account from February 1, 2023 through February 28, 2023; a copy of a June 9, 2023 email message from Fidelity to Mr. Mesner; several preview order forms for the purchase of PacWest Bancorp in March 2023; investment account activity for Mr. Mesner's Fidelity account from March 1, 2023 through March 31, 2023; several preview order forms for the purchase of Telesis Bio Inc. in March 2023; several preview order forms for the purchase of Geovax Labs Inc. in February 2023; several preview order forms for the purchase of Baudax Bio Inc. in February 2023; another investment account activity for Mr. Mesner's Fidelity account from February 1, 2023 through February 28, 2023; order forms for the purchase of Kiora Pharmaceuticals, Inc. in February and March 2023, a portion of a Fidelity Account Customer Agreement; several preview order forms for Lixte Biotechnology Holdings Inc in

---

[1]     FINRA refers to the Financial Industry Regulatory Authority, a private United States corporation that – among other things - self-regulates member brokerage firms.

February 2023; several preview order forms for Rayonier Advanced Materials, Inc. in February 2023; a June 16, 2023 trading graph of the stock price for Advanced Health Intelligence Ltd.; a February 24, 2023 trade restriction removal notice from Fidelity; a March 1, 2023 trade restriction notice from Fidelity; a March 2, 2023 trade restriction notice from Fidelity; a March 14, 2023 response to voluntary reorganization instructions from Fidelity; and account records from Fidelity dated May 31, 2023. *Id.*, Attach. 3.

The third exhibit consists of numerous messages between Mr. Mesner and Fidelity from January 12, 2023 through March 31, 2023; an investment account activity report for Mr. Mesner from Fidelity from December 1, 2022 through December 31, 2022; an investment account activity report for Mr. Mesner from Fidelity from January 1, 2022 through January 31, 2022; an investment account activity report for Mr. Mesner from Fidelity from February 1, 2023 through February 28, 2023; an investment account activity report for Mr. Mesner from Fidelity from March 1, 2023 through March 31, 2023; an investment account activity report for Mr. Mesner from Fidelity from April 1, 2023 through April 30, 2023; a message between Mr. Mesner and Fidelity dated June 13, 2023; an investment account activity report for Mr. Mesner from Fidelity from September 1, 2022 through September 30, 2022; an investment account activity report for Mr. Mesner from Fidelity from November 1, 2022 through November 30, 2022; and an announcement from Windtree Therapeutics of a reserve stock split dated February 23, 2023. *Id.*, Attach. 4.

Mr. Mesner's filings reveal that he is a retail investor and that he is complaining about Fidelity's handling of his individual brokerage account from July 2022 through June 2023. *Compl.* at 1. Mr. Mesner stresses that he did not give up his right to sue Fidelity when he agreed to its customer agreement. *Id.* at 1-2. In his personal statement Mr. Mesner accuses Fidelity of engaging in misrepresentation and fraud in its handling of his account. *Id.* at 3-6. Mr. Mesner then itemized damages he claims from Fidelity's handling of specific trades. *Id.* at 8-21.

### B.   Post-Filing Developments

On July 24, 2023, the Fidelity Defendants (collectively Fidelity) filed a motion to dismiss Mr. Mesner's complaint and to compel arbitration. *Defs.' Mot. to Compel Arb. and to Dismiss the Compl. in Favor of Arb.* (ECF No. 6) (*Def.'s Mot. to Compel and Dismiss*). On August 3, 2023, Mr. Mesner responded to the motion to dismiss and compel arbitration. *Pl.'s Opp'n to Mot. to Compel Arb. and to Dismiss the Compl.* (ECF No. 9) (*Pl.'s First Dismiss Opp'n*). Also on August 3, 2023, Mr. Mesner filed a motion requesting relief. *Pl.'s Mot. Granting Pl.'s Req. for Relief* (ECF No. 8) (*Pl.'s Req. for Relief*). On August 10, 2023, Fidelity filed both a reply to Mr. Mesner's opposition to its motion for arbitration and to dismiss and a response to his motion requesting relief. *Def.'s Consolidated Resp. and Reply to Pl.'s Filings Dated Aug. 3, 2023* (ECF No. 10) (*Def.'s First Opp'n*). On August 14, 2023, Mr. Mesner filed a reply to Fidelity's opposition to his motion requesting relief. *Pl.'s Reply to Resp. to Mot.* (ECF No. 12) (*Pl.'s Relief Reply*).

On August 14, 2023, Mr. Mesner filed a motion to amend his complaint, attaching his proposed fifty-two page amended complaint together with 114 attachments. *Pl.'s Mot. to Am. Compl.* (ECF No. 13) (*Pl.'s Mot. to Am. Compl.*); *Id.* Attach. 1, *First Am. Compl.* (*First Am. Compl.*).  On August 16, 2023, Mr. Mesner filed a response to an affidavit filed on July 24, 2023 signed by Diane Brown on behalf of Fidelity. *Pl.'s Reply to Resp. to Mot. Aff. of Diane Brown* (ECF No. 14) (*Pl.'s Diane Brown Reply*).  On September 6, 2023, Mr. Mesner filed a reply to Diane Brown's sworn declaration. *Pl.'s Reply to Resp. to Mot. Decl. of Diane Brown* (ECF No. 15) (*Pl.'s Second Diane Brown Reply*).

Also on September 6, 2023, Mr. Mesner filed a motion for default judgment against Fidelity. *Pl.'s Mot. for Default J.* (ECF No. 16) (*Pl.'s Default Mot.*).  On September 12, 2023, Fidelity filed a response to Mr. Mesner's motion for default judgment and his response to Ms. Brown's sworn declaration, as well as a renewed motion to compel arbitration. *Defs.' Consolidated Resp. to Pl.'s Filings Dated Sept. 6, 2023 and Renewed Mot. to Compel Arb. and to Dismiss in Favor of Arb.* (ECF No. 17) (*Defs.' Renewed Mot. or Defs.' Opp'n to Default Mot.*).

From September 13, 2023 to today, Mr. Mesner proceeded to file a cascade of documents, twenty-two in total:[2]

---

[2]     Mr. Mesner's relentless filings have complicated this case, delayed the Court's response to the motions, and made its task more onerous than necessary.  Litigants are not allowed to file addenda to their pleadings without leave of court.  The District of Maine has an important local rule, which sets forth how a party must respond and reply to a motion.  D. ME. LOC. R. 7.  If a party wishes to file something outside the confines of Rule 7, the party should ask permission to do so.  In this way, the Court controls its docket.

          Here, on nearly a daily basis since September 13, 2023, Mr. Mesner filed numerous new documents further responding to already pending matters without asking permission to do so.  The

1) a September 13, 2023 response to Fidelity's motion to compel arbitration, *Pl.'s Resp. to Mot. ECF 17* (ECF No. 19) (*Pl.'s Second Opp'n*),

2) a September 15, 2023 additional response to Fidelity's motion to compel arbitration and a renewed motion for granting his request for relief, *Pl.'s Additional Resp. to Defs.' Filing Dated Sept. 12, 2023 and RENEWED Mot. for Granting Pl.'s Req. for Relief* (ECF No. 20) (*Pl.'s Third Opp'n or Pl's Renewed Req. for Relief*);

3) a September 15, 2023 motion for sanctions, *Pl.'s Mot. for Sanctions* (ECF No. 21) (*Pl.'s Mot. for Sanctions*);

4) a September 18, 2023 third response to Fidelity's motion to compel arbitration, *Pl.'s Resp. to Mot. ECF 17* (ECF No. 22) (*Pl.'s Fourth Opp'n*);

5) a September 21, 2023 addendum to Plaintiff's motion for sanctions, *Pl.'s Addendum to Mot. ECF 21* (ECF No. 23)[3] (*Pl.'s Sanctions Addendum*);

6) a September 25, 2023 reply to Fidelity's response to Mr. Mesner's motion to amend complaint, *Pl.'s Resp. to ECF 13* (ECF No. 24);

7) a September 25, 2023 amended complaint with 117 exhibits, *Am. Compl.* (ECF No. 25) (*Second Am. Compl.*);

---

Court is cognizant of the need to treat pro se filers such as Mr. Mesner with liberality, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and the Court has therefore reviewed his filings.

[3]     Mr. Mesner entitled this filing as a "Response to Motion ECF 21". *See Pl.'s Sanctions Addendum* (ECF No. 23). But this title is confusing because ECF Number 21 is his motion for sanctions and under the rules, he cannot file a response to his own motion. The Court relabeled this filing as an addendum to his motion for sanctions.

8) an October 3, 2023 addendum to his motion for sanctions, *Pl.'s Resp. to Mot. ECF 21* (ECF No. 29)[4] (*Pl.'s Second Sanctions Addendum*);

9) an October 3, 2023 third reply to motion for sanctions, *Pl.'s Resp. to Mot. ECF 21* (ECF No. 30)[5] (*Pl.'s Third Sanctions Addendum*);

10) an October 4, 2023 memorandum of law, *Pl.'s Mem. of Law – Notice of Constitutional Question* (ECF No. 31) (*Pl.'s Fifth Opp'n*);

11) an October 5, 2023 response to motions, *Pl.'s Resp. to Mot. ECF 6, ECF 17, ECF 18* (ECF No. 35) (*Pl.'s Sixth Opp'n*);

12) an October 11, 2023 response to motion, *Pl.'s Resp. to Mot. ECF 16* (ECF No. 39) (*Pl.'s Default Reply*);

13) an October 11, 2023 fourth addendum to his motion for sanctions, *Pl.'s Resp. to Mot. ECF 21* (ECF No. 40)[6] (*Pl.'s Fourth Sanctions Addendum*);

14) an October 11, 2023 renewed motion for default judgment, *Pl.'s Renewed Mot. for Default J. (ECF 16)* (ECF No. 41) (*Pl.'s Renewed Default*);

15) an October 11, 2023 attachment to the amended complaint, *Pl.'s Attach. to ECF 25 – Am. Compl. B* (ECF No. 42);

---

[4]   Mr. Mesner entitled this filing as a "Response to Motion ECF 21". *See Pl.'s Sanctions Addendum* (ECF No. 29). But again, this title is confusing because ECF Number 21 is his motion for sanctions and under the rules, he cannot file a response to his own motion. The Court relabeled this filing as a second addendum to his motion for sanctions.

[5]   Mr. Mesner entitled this filing as a "Response to Motion ECF 21". *See Pl.'s Sanctions Addendum* (ECF No. 30). But again, this title is confusing because ECF Number 21 is his motion for sanctions and under the rules, he cannot file a response to his own motion. The Court relabeled this filing as a third addendum to his motion for sanctions.

[6]   Mr. Mesner entitled this filing as a "Response to Motion ECF 21". *See Pl.'s Sanctions Addendum* (ECF No. 40). But again, this title is confusing because ECF Number 21 is his motion for sanctions and under the rules, he cannot file a response to his own motion. The Court relabeled this filing as a fourth addendum to his motion for sanctions.

16) an October 11, 2023 emergency motion for a temporary restraining order, *Pl.'s Emer. Mot. for a TRO* (ECF No. 43) (*Pl.'s Mot. for TRO*);

17) an October 11, 2013 fifth response to motion for default judgment, *Pl.'s Resp. to Motion* (ECF No. 44);

18) an October 11, 2023 response to renewed motion to dismiss, *Pl.'s Resp. to Mot. ECF 37* (ECF No. 45) (*Pl.'s Seventh Opp'n*);

19) an October 16, 2023 amended complaint, *Mem. of Law* (ECF No. 47);

20) an October 16, 2023 reply to response to motion, *Pl.'s Reply to Resp. to Mot. ECF 37* (ECF No. 48) (*Pl.'s Eighth Opp'n*);

21) An October 18, 2023 fifth addendum to his motion for sanctions, *Pl.'s 5th Resp. to Mot. for Sanctions, (ECF 21)* (ECF No. 50) (*Pl.'s Fifth Sanctions Addendum*); and

22) An October 18, 2023 attachment to ECF Number 31, *Pl.'s Attachs. to ECF 31 – Notice of Const. Ques., to ECF 34 – Letter from the Clerk's Office to U.S. Att'y Darcie N. McElwee, and to ECF 36 – Letter from the Clerk's Office to U.S. Att'y Darcie N. McElwee.*

Meanwhile, on October 10, 2023, Fidelity filed a renewed motion to dismiss and to compel arbitration. *Defs.' Renewed Mot. to Compel Arb. and Mot. to Dismiss the Am. Compl. in Favor of Arb.* (ECF No. 37) (*Defs.' Renewed Mot.*).

## II.   POSITIONS OF THE PARTIES

The Court addresses the pending motions by grouping them into categories.

### A.    Defendants' Motions to Compel Arbitration

#### 1.    Fidelity's Position

In its motions, Fidelity moves to dismiss Mr. Mesner's complaint on the ground that he executed a Fidelity Account Customer Agreement (Agreement), which contains a broad arbitration clause in an arbitration forum sponsored by FINRA. *Def.'s Renewed Mot.* at 2.  Quoting the contractual provision, Fidelity notes that the arbitration clause in the Agreement is in bold and placed Mr. Mesner on notice of a pre-dispute arbitration clause.  *Id.*  Fidelity then quotes the pre-dispute arbitration clause and contends that the language "could not be much clearer." *Id.* at 2-3.

Citing federal caselaw, including decisions of the United States Supreme Court, Fidelity argues that the arbitration clause in its Agreement is enforceable and compels arbitration.  *Id.* at 3.  Even though Mr. Mesner challenges the validity of the arbitration clause, Fidelity maintains that whether an arbitration clause is enforceable goes to the arbitrator, not the court.  *Id.* at 4.  Citing caselaw, Fidelity says that Mr. Mesner's allegations do not remove his case from the scope of the arbitration clause.  *Id.* at 5-6.

Turning to co-defendant FMR, Fidelity says that even though FMR is not a signatory to the Agreement, FMR may compel arbitration based on "veil piercing / alter ego" theories.  *Id.* at 6.  Similarly, Fidelity cites the doctrine of equitable estoppel to prevent Mr. Mesner from proceeding against FMR without first going to arbitration.  *Id.*  This is especially true, it argues, because the sole basis of Mr.

Mesner's complaint against FMR is its ownership of Fidelity Brokerage Services. *Id.* at 7.

Finally, Fidelity urges the Court to dismiss Mr. Mesner's complaint rather than stay the proceeding here. *Id.* at 8.

### 2.    Andrew Mesner's Opposition

Mr. Mesner filed a series of oppositions to Fidelity's motion to dismiss and to compel arbitration. The Court turns first to Mr. Mesner's August 3, 2023 filing. *Pl.'s First Dismiss Opp'n* at 1-13. Mr. Mesner contends that his agreement to arbitrate does not extend to alleged violations of federal securities law. *Id.* at 3. Mr. Mesner draws a distinction between "unlawful controversies," which he maintains are not subject to the arbitration clause, and "all controversies," which he argues are. *Id.* Mr. Mesner maintains that the "standardized, non-negotiable Fidelity Account Customer Agreement" has an arbitration clause that contains "traits of unconscionability." *Id.* Mr. Mesner says that consequently these agreements are "not binding in law." *Id.* at 3-4. Mr. Mesner relies on several statutory provisions in federal law, which he says provide jurisdiction in the federal courts. *Id.* at 4. In essence, Mr. Mesner contends that federal statutes take precedence over arbitration agreements. *Id.* at 4-8. Mr. Mesner disputes the applicability of estoppel to unconscionable agreements. *Id.* at 8-9. For these reasons, Mr. Mesner asks the court to deny Fidelity's motion. *Id.* at 9-13.

10

### 3.     Fidelity's Reply

Noting that Mr. Mesner contends that federal statutes take precedence over arbitration clauses, Fidelity argues that in *Shearson/American Express v. McMahon*, 482 U.S. 220 (1987) and *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (2989), the United States Supreme Court "soundly rejected that argument." *Def.'s First Opp'n* at 1.  Responding to Mr. Mesner's argument that the clause in Fidelity's Agreement is unconscionable, Fidelity contends that the question of arbitrability itself must go to the arbitrator.  *Id.* at 2.

### 4.     Fidelity's Renewed Motion

Responding to Mr. Mesner's motion to amend his complaint, Fidelity contends that the allegations in the amended complaint constitute no substantive change from the original complaint.  *Defs.' Renewed Mot.* at 1-2.  Furthermore, Fidelity maintains that Mr. Mesner is mistaken in believing that his amended complaint is operative without court action and that under the law Fidelity was not obligated to file an answer to his amended complaint.  *Id.*  Assuming that the amended complaint were to become the operative complaint, Fidelity points out that this would not change the principle that Mr. Mesner agreed to arbitrate disputes.  *Id.* at 2-3.  Finally, Fidelity objects to Mr. Mesner's aspersions against Diane Brown and Fidelity.  *Id.* at 3-4.

### 5.     Andrew Mesner's Second Opposition

On September 13, 2023, Mr. Mesner filed his second opposition to Fidelity's motion to dismiss and to compel.  *Pl.'s Second Opp'n* at 1-5.  In his second opposition, Mr. Mesner raises several points.  He refers to several filings that the Court will

separately address.  Mr. Mesner contends that he has a private right of action to enforce federal criminal law.  *Id.* at 4.  Mr. Mesner reiterates his view that certain federal statutes preempt any arbitration agreement.  *Id.*  Mr. Mesner also disputes whether he entered into a binding arbitration agreement with FMR, LLC rather than Fidelity Brokerage Services, LLC.  *Id.* at 5.

### 6.    Andrew Mesner's Third Opposition

On September 15, 2023, Mr. Mesner filed his third opposition to Fidelity's motion to dismiss and to compel.  *Pl.'s Third Opp'n* at 1.  In this filing, Mr. Mesner criticizes the Court for failing to issue orders on the motions before the Court and asserts that the Court's failure to act "gives the impression of bias in favor of the defendants."  *Id.*

### 7.    Andrew Mesner's Fourth Opposition

On September 18, 2023, Mr. Mesner filed his fourth opposition to Fidelity's motion to dismiss and to compel.  *Pl.'s Fourth Opp'n* at 1-8.  In this filing, Mr. Mesner refers to a newspaper article from Reuters.com, which describes judicial concern about the constitutionality of FINRA's enforcement powers.  *Id.* at 1-2.  Mr. Mesner says that he has placed "documentary evidence" before the Court that FINRA "has a bias in favor of the defendant Fidelity Brokerage Services, LLC, a paying customer of FINRA."  *Id.* at 2.  Mr. Mesner argues that FINRA arbitration "concerning violations of U.S. Federal Securities Laws are likely unconstitutional."  *Id.* at 3 (emphasis in original).  Mr. Mesner reiterates he views the arbitration provision as unconscionable.  *Id.*  Mr. Mesner accuses Fidelity of concealing its identity and of

engaging in "**Fraud by non-disclosure**." *Id.* at 6-7 (emphasis in original). Citing the Civil Justice Reform Act, Mr. Mesner notes that judges are encouraged to resolve matters before them within a certain time. *Id.* at 8.

### 8. Andrew Mesner's Fifth Opposition

Although not strictly filed as an opposition to Fidelity's motion to dismiss and to compel, on October 4, 2023, Mr. Mesner filed a memorandum of law that placed the Court on notice that he is raising certain constitutional issues. *Pl.'s Fifth Opp'n* at 1-4. These include a violation of his Seventh Amendment right to a jury trial and his Ninth Amendment non-enumerated rights. *Id.*

### 9. Andrew Mesner's Sixth Opposition

On October 5, 2023, Mr. Mesner filed his sixth opposition to Fidelity's motion to dismiss and to compel. *Pl.'s Sixth Opp'n* at 1-5. In this filing, Mr. Mesner expands upon his constitutional and unconscionability arguments. *Id.*

### 10. Andrew Mesner's Seventh Opposition

On October 11, 2023, Mr. Mesner filed his seventh opposition to Fidelity's motion to dismiss and to compel. *Pl.'s Seventh Opp'n* at 1-53. In this filing, Mr. Mesner has heightened his language, accusing Fidelity of engaging in "another lie that is a material misrepresentation of facts." *Id.* at 3. Mr. Mesner claims that if the Court rules in Fidelity's favor, it would make new law and it lacks jurisdiction to make new law. *Id.* at 4. Mr. Mesner asserts that "FINRA has more likely than not conspired with the defendants' in oppressing the plaintiff's claims." *Id.* To this opposition, Mr. Mesner attaches forty-seven pages of documents, including emails

between himself and Matthew Swyndle of FINRA, some with multiple attachments, and a letter dated June 12, 2023 from Mr. Swyndle to Mr. Mesner.  *Id.* at 6-53.

### 11.   Andrew Mesner's Eighth Opposition

On October 16, 2023, Mr. Mesner filed his eighth opposition to Fidelity's motion to dismiss and to compel.  *Pl.'s Eighth Opp'n* at 1-6.  In this filing, Mr. Mesner emphasized that he does not waive his rights to a court hearing before judgment.  *Id.* at 3.  Mr. Mesner reiterated his view that Fidelity is operating unlawfully by obscuring its corporate names, his claim of a Seventh Amendment violation, and demands that the Court act on his motions.  *Id.* at 3-6.

### B.   Andrew Mesner's Requests for Relief

### 1.   Andrew Mesner's Request for Relief

On August 3, 2023, Mr. Mesner filed a motion in which he requested relief. *Pl.'s Req. for Relief* at 1-4.  In this motion, Mr. Mesner asked that the court consider the "owners, shareholders and other persons concerned of [Fidelity] and [FMR LLC] as served upon [Andrew] serving each of the defendants Registered Agents."  *Id.* at 1 (alterations in original).  Next, Mr. Mesner asked the court to "render the 'Fidelity Account Customer Agreement' and any other '[Fidelity] agreements' I am bound null and void."  *Id.* (alterations in original). Mr. Mesner also asked that the court order the Defendants to pay the costs of his lawsuit, including reasonable attorney's fees. *Id.*  In support of his request, Mr. Mesner refers to "documented lie[s]" he contends both Fidelity and its counsel engaged in.  *Id.* at 2.  Mr. Mesner maintains that Fidelity does not dispute many of his claims and therefore he is entitled to his requested relief.

*Id.* at 2-4.  Mr. Mesner also states that if the court failed to grant his requests for relief, it "would expressly provide an unfair advantage to the defendants going forward." *Id.* at 4.

### 2.    Fidelity's Opposition to the Request for Relief

On August 10, 2023, Fidelity filed its opposition to Mr. Mesner's request for relief. *Defs.' First Opp'n* at 1-4.  In its opposition, citing caselaw, Fidelity rejects Mr. Mesner's claim that federal statutory law allows him to proceed to suit in derogation of his agreement to arbitrate disputes with Fidelity. *Id.* at 1-2.  Fidelity also notes that the law requires disputes about arbitrability go to the arbitrator. *Id.* at 2.  In addition, Fidelity disputes Mr. Mesner's claims that it has "somehow conceded the merits of the Complaint." *Id.* at 3.  Finally, Fidelity disagrees that 15 U.S.C. § 78j provides for an award of attorney's fees prior to a finding of liability. *Id.*

### 3.    Andrew Mesner's Relief Reply

On August 14, 2023, Mr. Mesner filed a reply to Fidelity's opposition to his request for relief. *Pl.'s Relief Reply* at 1-3.  In his reply, Mr. Mesner stresses that Fidelity is not entitled to immunity from civil lawsuit. *Id.* at 1.  Mr. Mesner asserts that Fidelity and its counsel have engaged in dilatory practices. *Id.*  Mr. Mesner cites caselaw that encourages courts to hold pro se litigants to less stringent standards. *Id.* at 1-2.  Mr. Mesner reiterates his claim that Fidelity and its lawyers are "documented liar[s]." *Id.* at 2.

### 4. Andrew Mesner's Renewed Request for Relief

On September 15, 2023, Mr. Mesner filed a renewed request for relief. *Pl.'s Renewed Req. for Relief* at 1. In this brief filing, Mr. Mesner again complains about the Court's failure to act on his motions. *Id.*

## C. Andrew Mesner's Amended Complaints

### 1. Andrew Mesner's Motion to Amend Complaint

On August 14, 2023, Mr. Mesner filed a motion to amend his complaint, attaching his proposed fifty-two page amended complaint together with 114 attachments. *Pl.'s Mot. to Am. Compl.* (ECF No. 13) (*Pl.'s Mot. to Am. Compl.*). Mr. Mesner's motion itself does not describe the bases for his motion. *Id.* Instead, this is found in the first attachment. *Id.* Attach. 1 at 1. Mr. Mesner says that he is seeking to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), stating that Fidelity has requested that the original complaint be amended to change Fidelity Management & Research Company LLC to FMR LLC. *Id.*

### 2. Andrew Mesner's First Amended Complaint

Also on August 14, 2023, Mr. Mesner filed an amended complaint as attachment A, *Id.* Attach. 1 at 1-52, and appended one hundred and fourteen attachments. *Id.* Attachs. 2-115.

### 3. Andrew Mesner's Second Amended Complaint

On September 25, 2023, Mr. Mesner filed a second amended complaint, which he denominated Amended Complaint B. *Second Am. Compl.* In his filing, Mr. Mesner states that he "amends the complaint hereto as Amended Complaint B, as the federal

rule of civil procedure allows the plaintiff to amend the complaint at any point before the defendants answer the complaint." *Id.* at 1.  The Second Amended Complaint is found in attachment 1 to ECF Number 25. *Second Am. Compl.* at 1-64.  Mr. Mesner attached one hundred and seventeen attachments to the Second Amended Complaint. *Id.* Attachs. 2-118.

### D.   Andrew Mesner's Motion for Default Judgment

#### 1.   Andrew Mesner's Motion for Default Judgment

On September 6, 2023, Mr. Mesner filed a motion for default judgment. *Pl.'s Default Mot.* at 3-11.  In his motion, Mr. Mesner asserts that Fidelity "responded late to the Plaintiff's complaint, missing the Court deadline of 07/21/2023 to respond" and that "the defendant Fidelity Brokerage Services LC made an appearance in Court on 07/24/2023 with the defendant's motion to dismiss." *Id.* at 3-4.  Mr. Mesner asserts that "Fidelity Brokerage Services LLC did not provide a reason to the Court for the late filing and has been in default since 07/24/2023." *Id.* at 4.  In addition, Mr. Mesner states that FMR LLC "is in default for not responding to Plaintiff's motion to amend the complaint, therein the Plaintiff properly named defendant 2 as FMR LLC thus requiring defendant 2 FMR LLC to respond to Amended Complaint A." *Id.* at 4.  In Mr. Mesner's view, Fidelity's "motion to dismiss was dilatory and did not provide the Court with a reason for defendant 1 Fidelity Brokerage Services LLC filing late." *Id.* Within the motion for default judgment, Mr. Mesner includes a discovery demand. *Id.* at 5-6.  He then itemizes damages that he asks the Court to impose. *Id.* at 6-11.

### 2. Fidelity's Opposition to Motion for Default Judgment

On September 12, 2023, Fidelity filed its opposition to Mr. Mesner's motion for default judgment. *Defs.' Opp'n to Default Mot.* at 1-2. Fidelity says that Mr. Mesner "appears to have based his most recent filings on a misapprehension," namely that Fidelity was bound to answer his amended complaint. *Id.* at 1. Fidelity points out that because Mr. Mesner's proposed amendment was never docketed as an amended complaint, Fidelity was not required to answer it. *Id.*

### 3. Andrew Mesner's Reply to Fidelity's Default Opposition

On October 11, 2023, Mr. Mesner replied to Fidelity's opposition to his motion for default judgment. *Pl.'s Default Reply* at 1-10. In his reply, Mr. Mesner supplied invoices for expenses and costs he has incurred by filing his lawsuit. *Id.* at 4-10.

### 4. Andrew Mesner's Renewed Motion for Default Judgment

Also on October 11, 2023, Mr. Mesner filed a renewed motion for default judgment. *Pl.'s Renewed Default* at 1-3. In his motion, Mr. Mesner reiterates the argument he previously made in his motion for default and in his reply.

### E. Andrew Mesner's Motion for Sanctions

### 1. Andrew Mesner's Motion for Sanctions

On September 15, 2023, Mr. Mesner moved this Court to impose sanctions against Fidelity. *Pl.'s First Sanctions Mot.* at 1-8. Mr. Mesner begins by citing the provisions of Federal Rule of Civil Procedure 11. *Id.* at 3. In his motion, Mr. Mesner cites the following instances to justify the imposition of sanctions:

1) In Fidelity's motion to dismiss, Fidelity states that Mr. Mesner "alleges that the Agreement as a whole is long and hard for him to understand." *Id.* at 4 (quoting *Defs.' Mot. to Dismiss and Compel* at 22);

2) In the Declaration of Diane Brown, she states that "Fidelity Management and Research Company LLC is a separate firm, distinct from FMR LLC, that conducts investment advisory business. Fidelity Management & Research Company LLC is not a direct or indirect owner of FBS." *Id.* (quoting *Decl. of Diane Brown* at 1);

3) In the Declaration of Diane Brown, she states that "2. FMR LLC is the ultimate parent company of the group of affiliated Fidelity Investments companies including Defendant Fidelity Brokerage Services LLC ('FBS' and, collectively with its affiliates, 'Fidelity')." Ms. Brown also states "3. . . in the ordinary course of Fidelity's business' and 'retrieve these records from Fidelity's system.'" *Id.* at 5 (quoting *Decl. of Diane Brown* at 1);

4) In Fidelity's consolidated response to both Plaintiff's request for relief and his response to Fidelity's motion to dismiss, Fidelity wrote "To the extent Mr. Mesner seeks to have counsel represent him, either on an hourly fee or contingency basis, he is free to retain counsel of his choosing." *Id.* (quoting *Defs.' First Opp'n* at 3);

5) In Fidelity's consolidated response, Fidelity wrote "To the extent Mr. Mesner purports to challenge the veracity of Ms. Brown's statements, he lacks any personal knowledge or other basis to do so" and "The public

documents that Mr. Mesner relies upon are not in any way inconsistent with Ms. Brown's statement. . .." *Id.* at 6 (quoting *Defs.' Mot. to Dismiss and Compel* at 3);

6) In Fidelity's consolidated response, Fidelity wrote "However, Mr. Mesner has now made baseless, inflammatory, and extraneous attacks on Fidelity, its employees, and counsel, in several filings" and "Fidelity respectfully requests that the Court direct Mr. Mesner refrain from making extraneous or inflammatory comments in any future filings." *Id.* (quoting *Defs.' Mot. to Dismiss and Compel* at 3); and

7) In Fidelity's consolidated response, Fidelity wrote "Lastly, our records reflect that Mr. Mesner has closed his Firm accounts which reflect $0 balances as of the date of this writing." *Id.* at 7 (quoting *Defs.' Mot. to Dismiss and Compel* at 2).

Mr. Mesner maintains that these Fidelity statements are false and demands that the Court impose sanctions on Fidelity. *Id.* at 3-8.

## 2.   Andrew Mesner's Sanctions Addendums

Between September 21, 2023, and October 11, 2023, Mr. Mesner filed four addendums to his September 15, 2023 motion for sanctions. *Pl.'s Sanctions Addendum*; *Pl.'s Second Sanctions Addendum*; *Pl.'s Third Sanctions Addendum*; *Pl.'s Fourth Sanctions Addendum*. In his first addendum, Mr. Mesner says that Fidelity has used deceptively similar business names and is illegally referring to itself in these proceedings as "Fidelity." *Pl.'s Sanctions Addendum* at 3-4. In his second addendum,

Mr. Mesner charges Attorney Goldman, who represents Fidelity, with mail and wire fraud because he sent the Fidelity Account Customer Agreement to Mr. Mesner by interstate mail. *Pl.'s Second Sanctions Addendum* at 3-6. Mr. Mesner also accuses Attorney Goldman of attempting to improperly influence this Court. *Id.* at 7-13. In Mr. Mesner's third addendum, he claims that Fidelity's failure to mention in its arbitration agreement that the customer is waiving his or her constitutional right to a jury trial is sanctionable. *Pl.'s Third Sanctions Addendum* at 3-5. In Mr. Mesner's fourth addendum, he itemizes his time and expenses on his motion for sanctions. *Pl.'s Fourth Sanctions Addendum* at 3-5.

### F.    Andrew Mesner's Motion for Temporary Restraining Order

On October 11, 2023, Mr. Mesner also moved this Court to issue a temporary restraining order against Fidelity. *Pl.'s Mot. for TRO* at 3-12. In his motion, Mr. Mesner says that he closed his Fidelity brokerage account on June 22, 2023, but on June 20, 2023, Fidelity reopened his closed account and placed $0.06 in it. *Id.* at 1. Mr. Mesner demands that the Court order Fidelity to liquidate his account, close his account, and cease mailing him. *Id.* at 2.

### G.    The Diane Brown Sworn Declaration

On July 24, 2023, Fidelity filed a sworn declaration of Diane Brown, a vice president at Fidelity in the FMR LLC legal department, authenticating Mr. Mesner's July 3, 2022 application to open a Fidelity account and the Fidelity Account Customer Agreement in effect on July 3, 2022. *Decl. of Diane Brown* (ECF No. 7); *Id.* Attach. 1,

*Andrew Scott Mesner App. For Fidelity Account*; *Id.* Attach. 2, *Fidelity Account Customer Agreement.*

On August 16, 2023, Mr. Mesner filed a response to Ms. Brown's sworn declaration. *Pl.'s Diane Brown Reply* at 1-3. In his response, Mr. Mesner avers that he "assumes Diane Brown committed perjury" by stating:

> Fidelity Management and Research Company LLC is a separate firm, distinct from FMR LLC, that conducts investment advisory business. Fidelity Management & Research Company LLC is not a direct or indirect owner of FBS.

*Id.* at 1. Mr. Mesner attached documents that he claims demonstrate that the associations of these businesses "contrast vastly rendering Diane Brown's quoted footnote misleading as to the material matter of the actual associations between FMR LLC, Fidelity Management & Research Company LLC, and Fidelity Brokerage Services LLC." *Id.* On September 6, 2023, Mr. Mesner filed a second reply to Diane Brown's sworn declaration. *Pl.'s Second Diane Brown Reply* at 1-4. The asserted basis of Mr. Mesner's second reply is that the sworn declaration is not the declaration of Diane Brown, but rather the declaration of FMR LLC. *Id.*

## III. DISCUSSION

### A. The Operative Complaint and Motion for Default Judgment

#### 1. Further Background

Mr. Mesner filed his original complaint on June 22, 2023. *Compl.* On June 22, 2023, the Clerk of Court issued summonses to Fidelity Brokerage Services LLC and to Fidelity Management & Research Company LLC. *Summons* (ECF No. 3). On July 14, 2023, Mr. Mesner filed affidavits of service on Fidelity Brokerage Services LLC

and on Fidelity Management & Research Company LLC.  *Affs. of Serv.* (ECF No. 5). The affidavits established that Mr. Mesner served Fidelity Brokerage Services LLC and Fidelity Research & Management Company LLC on June 30, 2023.  *Id.*

On July 24, 2023, Fidelity Brokerage Services LLC and Fidelity Management & Research Company LLC filed a motion compel arbitration and to dismiss the complaint in favor of arbitration.  *Mot. to Compel and to Dismiss.*  In its motion, Fidelity noted that Mr. Mesner may have intended to name FMR LLC, not Fidelity Management & Research Company LLC, as the defendant.  *Id.* at 1, n.1.  Fidelity also requested a change in the case caption from Fidelity Management & Research Company LLC to FMR LLC.  *Id.* at 1, n.2.

On August 14, 2023, Mr. Mesner filed a motion to amend complaint together with a proposed amended complaint.  *Pl.'s Mot. to Am. Compl.*; *First Am. Compl.*  Mr. Mesner's pleading is in an unconventional format; however, at the top of the first page, he lists Fidelity Brokerage Services LLC and FMR LLC as Defendants.  *First Am. Compl.* at 1.  In addition to this change, Mr. Mesner expands or alters the attachments to his complaint; Mr. Mesner's original complaint contained three exhibits and his First Amended Complaint contained one hundred and fourteen attachments.  *Compare Compl.* Attachs. 2-4, *with First Am. Compl.* Attachs. 2-115.

On September 6, 2023, Mr. Mesner filed a motion for default judgment.  *Pl.'s Default Mot.*  In his motion, Mr. Mesner claimed that Fidelity Brokerage Services LLC had responded late to his complaint.  *Id.* at 1.  Mr. Mesner said that the court-imposed deadline for Fidelity Brokerage Services LLC's response was July 21, 2023

23

but Fidelity Brokerage Services LLC did not respond until July 24, 2023.  *Id.* at 1-2.

Mr. Mesner then claimed that Fidelity Brokerage Services LLC was also in default

because it had not responded to a September 5, 2023 deadline to respond to his motion

to amend his original complaint.  *Id.* at 2.  In his motion for default judgment, Mr.

Mesner also claimed that FMR LLC had failed to respond to his Amended Complaint.

*Id.*

On September 25, 2023, Mr. Mesner filed a second amended complaint.  *Second

Am. Compl.*  This time, Mr. Mesner did not move to amend his complaint but simply

filed the complaint on the docket, claiming that he was amending his complaint as a

matter of right under Federal Rule of Civil Procedure 15.  *Id.* at 1.

Finally, on October 16, 2023, Mr. Mesner filed a third amended complaint,

again making no motion to amend and simply filing the complaint claiming he was

doing so as a matter of right.  *Third Am. Compl.* at 1.

## 2.   Discussion

Before addressing Fidelity's motion to dismiss, the Court resolves the question

of which of these pleadings is operative and whether Mr. Mesner is entitled to a

default judgment.

Federal Rule of Civil Procedure 15 controls a party's ability to amend a

complaint:

**(a) Amendments Before Trial.**

> **(1)** *Amending as a Matter of Course*. A party may amend its pleading
> once as a matter of course within:
>
> > **(A)** 21 days after serving it, or

> **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> **(2)** *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.
>
> **(3)** *Time to Respond.* Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

FED. R. CIV. P. 15(a).

First, Mr. Mesner is wrong in viewing Rule 15(a) as giving him the right to amend his complaint without a motion. Under Rule 15(a)(1)(A), Mr. Mesner could have filed an amended complaint as a matter of right within twenty-one days of service of process, i.e., by July 21, 2023. His August 14, 2023 motion to amend complaint did not fit within the twenty-one day rule and neither did his September 25, 2023 and October 16, 2023 pleadings.

Under Rule 15(a)(1)(B), Mr. Mesner still had the right to amend his complaint within twenty-one days after service of a motion under Rule 12(b), (e) or (f). Although Fidelity does not refer to a specific rule for its motion to dismiss and to compel arbitration, the Court views its motion as a motion under Rule 12(b)(1) because Fidelity effectively asserts that due to the arbitration clause this Court does not have subject matter jurisdiction over the controversy between Mr. Mesner and Fidelity. *See* FED. R. CIV. P. 12(b)(1); *Álvarez-Maurás v. Banco Popular of P.R.*, 919 F.3d 617, 622, 629 (1st Cir. 2019) (affirming dismissal of lawsuit in favor of arbitration under Rule 12(b)(1)); *Ortega Hernández v. Herbert J. Sims & Co., Inc.*, CIVIL No. 23-1266

25

(RAM), 2023 U.S. Dist. LEXIS 111664, at *4-5 (D.P.R. June 26, 2023) ("When there is no factual dispute as to the existence of a valid arbitration agreement, whether the motion to compel is brought pursuant to Rule 12(b)(1) or 12(b)(6) is a distinction without a difference") (internal punctuation omitted); *Asbell v. Integra Lifesciences Holdings Corp.*, No. 14-677(JAP), 2014 U.S. Dist. LEXIS 170587, at *4 (D.N.J. Dec. 10, 2014) ("Courts may use Rule 12(b)(1) to decide whether to dismiss a suit by virtue of an arbitration agreement between the parties").  This means that to fit under Rule 15(a)(1)(B), Mr. Mesner had to file an amended complaint within twenty-one days of the date Fidelity filed its motion to dismiss, July 24, 2023.  In other words, Mr. Mesner had until August 11, 2023.  Mr. Mesner filed the motion to amend his complaint on August 14, 2023, too late to take advantage of the amendment of right provision of Rule 15.

This does not mean he could not amend his complaint.  But it does mean that he is not allowed to do so as a matter of right simply by filing the amended complaint. Under this analysis, neither his September 25, 2023 nor his October 16, 2023 amended complaints is effective because he simply filed the amended complaints on the erroneous assumption that he had the right to do so without leave of court.

To amend his complaint after August 14, 2023, the Rule 15(a)(1)(B) deadline, Mr. Mesner had to comply with Rule 15(a)(2), which allows an amended pleading if the parties consent or with the approval of the Court.  As in other filings, whether Mr. Mesner complied with Rule 15(a)(2) is stymied by unconventional filings.  Mr. Mesner originally filed suit against Fidelity Brokerage Services and Fidelity

Management & Research Company LLC. *Compl.* However, in its July 24, 2023 motion to dismiss, Fidelity observed that Mr. Mesner "intended to name FMR LLC as opposed to Fidelity Management & Research Company LLC, as a second Defendant in this case." *Defs.' Mot. to Compel and to Dismiss* at 1, n.1. Fidelity further explained this issue in its motion. *Id.* at 2. Fidelity stated that it did "not wish to delay adjudication by contesting service or engaging in purely formalistic motion practice." *Id.* Fidelity requested that the Court "order correction of the caption insofar as necessary." *Id.*

The Court turns then to whether Fidelity consented to the filing of the First Amended Complaint. It is difficult to know whether Fidelity objects to the First Amended Complaint because it has not filed a "written consent" as required by Rule 15(b)(2). To the extent Mr. Mesner's First Amended Complaint changed the name of the second Defendant, Fidelity has no objection, and the Court has granted a presumed motion to that effect. Furthermore, comparing the original Complaint with the First Amended Complaint, the Court is uncertain whether there are differences between the two documents that would complicate Fidelity's written consent to the name change only. There are verbatim similarities, but the original Complaint is twenty-two pages long and the First Amended Complaint is fifty-one pages long. The original Complaint attached three long exhibits and the First Amended Complaint contains one hundred and fourteen exhibits. Because Fidelity has not filed a written consent to the filing of the First Amended Complaint, the Court concludes that the

parties have not complied with Rule 15(b)(2) and will not consider the First Amended Complaint as the operative complaint by consent.

The Court then turns to whether the parties have requested leave of court to file the First Amended Complaint. Although the language is not entirely clear, the Court deems Mr. Mesner's August 14, 2023 filing as a motion requesting leave of court under Rule 15(a)(2) for the filing of the First Amended Complaint. This is based on the Court's interpretation of Mr. Mesner's language as confirming that the First Amended Complaint changes only the name of the second Defendant, a change to which Fidelity has consented.

Finally, the Court observes that the allegations in the original Complaint and the First Amended Complaint are the same for the substantive purpose of this Court's ruling on Fidelity's motion to dismiss and to compel arbitration.

Accordingly, the Court GRANTS Andrew Mesner's Motion to Amend Complaint (ECF No. 13) but STRIKES his Second Amended Complaint (ECF No. 25) and his Third Amended Complaint (ECF No. 47) because they have not been filed with a motion requesting leave of court. For purposes of this order, the operative complaint is the First Amended Complaint.[7]

---

[7]     For reasons the Court addresses in this order, the Court ORDERS that Fidelity not be required to file an answer to the First Amended Complaint because the Court is dismissing Mr. Mesner's First Amended Complaint without prejudice.

**B.      The Arbitrability of Andrew Mesner's Controversy with Fidelity**

In his First Amended Complaint, Mr. Mesner alleges that he held a Fidelity

Brokerage Services LLC individual brokerage account. *First Am. Compl.* at 3.  More

specifically, Mr. Mesner's First Amended Complaint alleges:

> My complaint originates from a Fidelity Brokerage Services LLC
> customer account, an individual brokerage account ending in 3205 that
> was open from July 2022 – June – 2023.

*Id.* at 3-4.  Mr. Mesner expressly references the terms of his "Fidelity Account

Customer Agreement" and quotes three provisions of the Agreement.  *Id.* at 50-52.

Fidelity's motion to dismiss and compel arbitration confirms Mr. Mesner's allegation

that he held a Fidelity Brokerage Services LLC individual brokerage account.  *Defs.'*

*Mot. to Compel and Mot. to Dismiss* at 3-4.  In addition, Fidelity authenticated Mr.

Mesner's application for a Fidelity account and the Fidelity-Mesner Agreement

through the sworn declaration of Diane Brown.  *Brown Sworn Decl.* Attachs. 1, *App.*,

2, *Agreement.*

"When considering motions to dismiss for lack of subject-matter jurisdiction

pursuant to Federal Rule of Civil Procedure 12(b)(1), the court may consider

materials outside the pleadings."  *Groden v. N&D Transp. Co.*, 866 F.3d 22, 24, n.3

(1st Cir. 2017); *accord Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

Moreover, the First Circuit has long allowed courts in addressing motions to dismiss

to consider "documents incorporated by reference into the complaint . . .."  *Saccoccia*

*v. United States*, 955 F.3d 171, 172 (1st Cir. 2020) (quoting *Haley v. City of Boston*,

657 F.3d 39, 46 (1st Cir. 2011)).  Here, the parties have referenced the agreement between Mr. Mesner and Fidelity and the Court has therefore considered it.

The Fidelity Account Customer Agreement contains an extended highlighted provision providing for pre-dispute arbitration to resolve disputes.  *Diane Brown Decl.* Attach. 2, *Fidelity Account Customer Agreement* at 19.  The provision is separately boxed within the Agreement and is entitled in bold, **Resolving Disputes — Arbitration**.  *Id.*  The key provision, again in bold, reads:

> **All controversies that may arise between you and us concerning any subject matter, issue or circumstance whatsoever (including, but not limited to, controversies concerning any account, order, distribution, rollover, advice interaction, or transaction, or the continuation, performance, interpretation or breach of this or any other agreement between you and us, whether entered into or arising before, on or after the date this account is opened) shall be determined by arbitration through the Financial Industry Regulatory Authority (FINRA) or any United States securities self-regulatory organization or United States security exchange of which the person, entity or entities against whom the claim is made is a member, as you may designate.**

*Id.* at 19.

"Almost a century ago (in 1925), Congress passed the Federal Arbitration Act (FAA) to replace judicial indisposition to arbitration with a national policy favoring it and placing arbitration agreements on equal footing with all other contracts."  *Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 79 (1st Cir. 2018) (quoting *Hal St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006))) (cleaned up).  The FAA "promotes a liberal federal policy favoring arbitration and guarantees that 'a written

provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction. . . shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract."  *Id.* at 79 (quoting 9 U.S.C. § 2).  In *National Federation*, the First Circuit pointed out that § 3 of the FAA, 9 U.S.C. § 3, "affords a mechanism by which a party can request a court to stay a judicial proceeding when the matter before the court involves an issue governed by an agreement to arbitrate."  *Id.* Furthermore, § 4 of the FAA, 9 U.S.C. § 4, "allows a party aggrieved by another party's refusal to arbitrate to petition a district court to compel arbitration in accordance with the parties' preexisting agreement."  *Id.*

In *National Federation*, the First Circuit set forth the requirements for a party to compel arbitration: the party must demonstrate "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by the clause, and that the claim asserted comes within the clause's scope."  *Id.* at 79-80 (quoting *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011)).  Based on Ms. Brown's sworn declaration, its attached documents, and Mr. Mesner's submissions, the Court concludes that each of these four prerequisites for enforcing the arbitration clause is satisfied in this case.  Mr. Mesner acknowledges that he entered into the Fidelity Customer Account Agreement, and, in fact, he cites provisions of the Agreement in his First Amended Complaint.  *First Am. Compl.* at 50-52.  As a party to the agreement, Fidelity is entitled to invoke the arbitration clause.  Both Mr. Mesner and

31

Fidelity are bound by the arbitration clause.  Finally, given the breadth of the language of the arbitration provision, the controversy between Mr. Mesner and Fidelity fits well within the scope of the arbitration agreement.

Once a court determines that the dispute is subject to a valid arbitration agreement, the United States Supreme Court has instructed that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*. 470 U.S. 213, 218 (1985) (emphasis in original).  "As this Court has often said, the 'preeminent' purpose of the FAA was to overcome some judges' reluctance to enforce arbitration agreements when a party tried to sue in court instead." *Badgerow v. Walters*, 142 S. Ct. 1310, 1322 (2022).  Courts must "'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds*, 470 U.S. at 221).

With these requirements in mind, the Court turns to several issues Mr. Mesner raised against compelling arbitration.  First, Mr. Mesner maintains that the arbitration clause is unconscionable.  *First Am. Compl.* at 51 ("Traits of unconscionability exist within the 'Fidelity Account Customer Agreement' and should in their entirety be rendered null and void").  Mr. Mesner does not expand upon why the Agreement is unconscionable and cites no caselaw to support his contention.  Mr. Mesner's argument runs against a solid wall of authority in the First Circuit upholding FINRA arbitration and FINRA awards in disputes between stockbrokers

and their clients.  *See, e.g., Ebbe v. Concorde Inv. Servs., LLC*, 953 F.3d 172 (1st Cir. 2020) (affirming FINRA arbitration award in favor of stockbroker and against investor); *Álvarez-Maurás*, 919 F.3d at 629 ("We hold that the claims brought by Vitor Álvarez-Maurás against Alexander Garcia may be resolved through arbitration, subject to the binding agreement between the parties"); *Ortega Hernández v. Herbert J. Sims & Co., Inc.*, 2023 U.S. Dist. LEXIS 111664, at *1-11 (granting motion to compel arbitration and dismissing lawsuit); *Merrill Lynch, Pierce, Fenner & Smith v. Collado-Schwarz*, No. 19-1248 (GAG), 2020 U.S. Dist. LEXIS 181019 (D.P.R. Sept. 29, 2020) (affirming FINRA arbitration award); *Davila v. UBS Fin. Servs. Inc. of P.R., Inc.*, No. CIVIL 1901689CCC, 2019 U.S. Dist. LEXIS 190395 (D.P.R. Nov. 1, 2019) (dismissing lawsuit and ordering FINRA arbitration between customer and stockbroker).  Mr. Mesner provided no cognizable basis for this Court to conclude that his agreement differs from other agreements for investors to arbitrate disputes with their stockbrokers through FINRA that are routinely enforced in the First Circuit.

Mr. Mesner's second point, namely that the mandatory arbitration provision violates his Seventh Amendment right to a jury trial, has not been accepted by the courts when the arbitration agreement waives the right to proceed in court and, as here, expressly waives the right to a jury trial.  As the Fifth Circuit wrote in *American Heritage Life Insurance Company v. Orr*, 294 F.3d 702 (5th Cir. 2002), "[t]he Seventh Amendment right to trial by jury is limited by a valid arbitration provision that waives the right to resolve a dispute through litigation in a judicial forum."  *Id.* at 710.  The *American Heritage* Court quoted the district court in Illinois:

> The Seventh Amendment does not confer the right to a trial, but only the right to have a jury hear the case once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes.

*Id.* (quoting *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 957 F. Supp. 1460, 1471 (N.D. Il. 1997)).  Although Mr. Mesner focuses on the "all controversies" and "including but not limited to" language in the Agreement, elsewhere the Agreement itself expressly addresses his waiver of the right to trial by jury:

> All parties to this Agreement are giving up the right to sue each other in court, including the right to trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

*Agreement* at 19.  When Fidelity wrote that Mr. Mesner alleged that the Agreement was long and hard to understand, Mr. Mesner characterized that statement as a "lie" and went on to say that the statement was "slanderous, it is wanton, it is defamation of [Andrew] [Mesner's] character and inflammatory."  *Pl.'s First Dismiss Opp'n* at 5. Accepting Mr. Mesner at his word, the Court takes as a given that he read the Agreement, understood it, and knowingly and intelligently waived his right to a jury trial when he signed it.

Nor have the courts agreed with Mr. Mesner's claim that despite the arbitration agreement, he still has the right to proceed in federal court under certain federal statutes.  Arbitration agreements commonly are enforced in many areas of law where there are existing federal statutes, and the FAA provides that the courts must enforce the arbitration agreement, "save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4."  9

34

U.S.C. § 2.  As Mr. Mesner has not provided the Court with grounds at law or in equity to revoke his agreement with Fidelity, his right to sue Fidelity under various federal statutes has been subsumed by his agreement to arbitrate his disputes.

### C.   Arbitrability of Andrew Mesner's Claim Against FMR LLC

In his original complaint, Mr. Mesner sued Fidelity Management & Research Company LLC as a second Defendant.  *Compl.*  However, when Fidelity filed its motion to dismiss, it revealed that the proper second Defendant would be FMR LLC and, as the Court discussed earlier, Mr. Mesner amended his complaint to name the correct second Defendant. *First Am. Compl.*  Mr. Mesner's arbitration agreement was between himself and Fidelity Brokerage Services LLC, and FMR LLC is not a party to that Agreement.  The question arises, therefore, whether FMR LLC may enforce the arbitration provisions of an Agreement to which it was not a party.

Fidelity contends that, even though FMR LLC is not a party to the Agreement, it is still entitled to enforce its arbitration requirement.  Fidelity cites *Ribadeneira v. New Balance Athletics, Inc.*, 65 F.4th 1 (1st Cir. 2023) to support its position that FMR LLC may be subject to the arbitration clause under the doctrine of equitable estoppel.  *Id.*  In *Ribadeneira*, New Balance and Peruvian Sporting Goods S.A.C. (PSG) entered into an agreement in which PSG agreed to distribute New Balance's products in Peru.  *Id.* at 6.  The Distribution Agreement contained an arbitration clause.  *Id.*  Rodrigo Ribadeneira was the controlling shareholder of PSG and of Superdeporte Plus Peru S.A.C. (Superdeporte), another business entity in Peru.  *Id.* New Balance and PSG had a contractual dispute, which was referred to arbitration;

however, even though they were not signatories to the New Balance-SAG contract, the arbitrator issued an award against both Mr. Ribadeneira and Superdeporte. *Id.* Mr. Ribadeneira and Superdeporte challenged the arbitral award on the ground that they were not signatories to the New Balance-PSG contract and therefore not bound by its arbitration provision. *Id.* Applying the law of the commonwealth of Massachusetts, the First Circuit rejected Mr. Ribadeneira and Superdeporte's arguments and enforced the arbitral award against Mr. Ribadeneira and Superdeporte, despite their non-signatory status. *Id.* at 20-28.

Here, the Agreement between Mr. Mesner and Fidelity includes a choice of law provision:

> **Governing Laws and Policies**
>
> **This Agreement and its enforcement are governed by the laws of the Commonwealth of Massachusetts, except with respect to its conflicts-of-law provisions.**

*Agreement* at 14. Consistent with the terms of the Agreement and with *Ribadeneira*, the Court applies the law of the commonwealth of Massachusetts.

In *Ribadeneira*, the First Circuit described six circumstances where a non-signatory could be bound by an arbitration agreement, including veil-piercing/alter ego and equitable estoppel. 65 F.4th at 19-20. In *Long v. Silver*, 248 F.3d 309 (4th Cir. 2001), the Fourth Circuit wrote that "when allegations against 'a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not

formally a party to the arbitration agreement.'" *Id.* at 320 (quoting *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988)).

Typically, the issue arises because a parent company resists arbitration, claiming that its subsidiary, not itself was a signatory. Here, the analysis is slightly different because both Fidelity Brokerage Services LLC and FMR LLC are asking that the controversy be arbitrated, and Mr. Mesner is objecting because FMR LLC is not a signatory. The question then is whether the principles of equitable estoppel apply to Mr. Mesner. The Court concludes they do.

Mr. Mesner's First Amended Complaint names FMR LLC as the second Defendant. *First Am Compl.* at 1 ("[T]he plaintiff [Andrew] is amending the complaint herein Amended Complaint #A to include changes to named defendant 2, FMR LLC, the ultimate parent company of Fidelity Brokerage Services LLC"). In his First Amended Complaint, Mr. Mesner certainly makes claims directly against Fidelity Brokerage Services LLC. *Id.* at 2 ("At one point, 72% of total holdings in my account were audaciously schemed by Fidelity Brokerage Services LLC"). But Mr. Mesner's claim against FMR LLC is grounded primarily on the premise that FMR LLC is Fidelity Brokerage Services LLC's corporate parent. *Id.* at 6 ("[FMR LLC] is liable to the plaintiff as [FMR LLC] is the ultimate parent company of [Fidelity] and other named entity subsidiaries of [FMR LLC] herein the complaint") (first bracket supplied). Mr. Mesner also alleges that FMR LLC is the owner of the Fidelity copyrights. *Id.* Mr. Mesner then asserts that "[FMR LLC] directly or indirectly, perhaps knowingly or not knowingly nevertheless permitted [Fidelity] to not disclose

to [Andrew] the potential for violations of the U.S. Federal Securities laws through [Andrews] [Fidelity] customer account." *Id.* (alterations in original).

In the Court's view, Mr. Mesner's allegations against FMR LLC and Fidelity Brokerage Services LLC are "based on the same facts and are inherently inseparable" and therefore, they should be arbitrated together. In other words, Mr. Mesner's claims against FMR LLC are either against FMR as parent corporation or in failing to oversee the activities of Fidelity Brokerage Services LLC that Mr. Mesner says caused him harm. If Mr. Mesner's claims against FMR LLC were not subject to arbitration, Congress' "liberal federal policy favoring arbitration," *National Federation*, 904 F.3d at 79, would be undercut by the need to resort to two different forums, arbitration and this lawsuit, to resolve essentially the same controversy between essentially the same parties arising from essentially the same facts. The Court therefore concludes that FMR LLC should be allowed to participate in the arbitration proceedings.

**D.  Fidelity's Late Answer**

Mr. Mesner filed his original complaint on June 22, 2023. *Compl.* On July 14, 2023, Mr. Mesner filed two affidavits of service. *Aff. of Serv.*, Attach. 1, *Aff. of Serv.* (ECF No. 5). The affidavits of service establish that a deputy sheriff in Delaware served Corporation Trust Company in Wilmington, Delaware for Fidelity Brokerage Services LLC and Fidelity Research & Management Company LLC on June 30, 2023. *Id.* The Defendants filed their motion to compel arbitration and to dismiss on July 24, 2023. *Defs.' Mot. to Compel Arb. and to Dismiss.* Noting that the docket indicates

that the Defendants were required to respond to the lawsuit by July 21, 2023, Mr. Mesner claims that they filed a late response and should be defaulted. *Pl.'s Default Mot.* at 3-4. Mr. Mesner is correct in his claim that the Defendants should have responded by July 21, not July 24.

> Federal Rule of Civil Procedure 12(a)(1)(A)(i) provides:
>
> Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows: (1) A defendant must serve an answer: (i) within 21 days after being served with the summons and complaint.

FED. R. CIV. P. 12(a)(1)(A)(i). The language of Rule 12 clarifies that the time begins the day after being served. June 30, 2023 was a Friday and the first countable day was July 1, 2023. *See* FED. R. CIV. P. 6(a)(1)(A) ("When the period is stated in days or a longer unit of time: (A) exclude the day of the event that triggers the period."). Counting July 1, 2023 as the first countable day, twenty-one days from July 1, 2023 fell on Friday, July 21, 2023, and the Defendants' response was due by the end of the day on July 21, 2023. Instead, the Defendants filed their motion to dismiss on July 24, 2023 without having filed a motion for leave to file a late response.

The Defendants' failure to respond to the complaint within twenty-one days of service of process does not, however, mean that Mr. Mesner is entitled to a default or to a sanction. Federal Rule of Civil Procedure 55 covers the entry of default and default judgments. FED. R. CIV. P. 55. By its terms, a default may be entered only against a party who "has failed to plead or otherwise defend" the complaint. FED. R. CIV. P. 55(a). Mr. Mesner moved for a default judgment on September 6, 2023 by which time the Defendants had clearly "indicated to [Mr. Mesner] a clear purpose to

defend the suit." *Key Bank v. Tablecloth Textile Co.*, 74 F.3d 349, 353 (1st Cir. 1996).

Consequently, a default judgment is not available to Mr. Mesner. Moreover, the First

Circuit has cautioned that "entry of a default judgment is a 'drastic' measure that

should only be employed in 'extreme situation[s].'" *Dimanche v. Mass. Bay Transp.*

*Auth.*, 893 F.3d 1, 10-11 (1st Cir. 2018) (quoting *Stewart v. Astrue*, 552 F.3d 26, 28

(1st Cir. 2009) (quoting *Affanato v. Merrill Bros.*, 547 F.2d 138, 140 (1st Cir. 1977))).

Nor would, in the Court's view, some lesser sanction be appropriate. Mr.

Mesner has not proffered any prejudice in a legal sense from the fact that the

Defendants responded to his lawsuit Monday, rather than the Friday before.

### E.   Andrew Mesner's Motion for Temporary Restraining Order

On October 11, 2023, Mr. Mesner filed an emergency motion for temporary

restraining order. *Pl.'s Mot. for TRO*. As the Court is dismissing his complaint and

granting Fidelity's motion to compel arbitration, the Court is also dismissing as moot

the motion for temporary restraining order. Even if the Court retained this case, the

Court would not grant the emergency motion for temporary restraining order because

Mr. Mesner has failed to demonstrate any irreparable harm as required by law. *See*

*Totem Forest Prods. v. T&D Timber Prods.*, No. 2:17-cv-00070-JDL, 2017 U.S. Dist.

LEXIS 26062, at *3 (D. Me. Feb. 24, 2017) (listing requirements for a TRO).

### F.   Andrew Mesner's Ninth Amendment Issue

The Court already addressed Mr. Mesner's Seventh Amendment claim. In

other filings, Mr. Mesner argues that the arbitration clause violates his Ninth

Amendment rights. *Pl.'s Fifth Opp'n* at 3-4. But Mr. Mesner cites no caselaw for his position and the Court deems his argument too undeveloped to consider.

### G.    Andrew Mesner's Remaining Issues

The Court does not address Mr. Mesner's remaining issues because they are either too undeveloped to generate a coherent ruling, even when reviewed liberally, or because they are now moot with the arbitration order and the dismissal of his lawsuit.

## IV.    CONCLUSION

The Court issues the following orders on existing pending motions and on other miscellaneous docket entries:

(1) The Court DISMISSES as moot Defendants Fidelity Brokerage Services LLC's and FMR LLC's Motion to Compel Arbitration and Motion to Dismiss the Amended Complaint in Favor of Arbitration (ECF No. 6).

(2) The Court DISMISSES as moot Andrew Mesner's Motion Granting Plaintiff's Request for Relief (ECF No. 8).

(3) The Court GRANTS the Plaintiff Andrew Mesner's Motion to Amend Complaint (ECF No. 13).

(4) The Court DISMISSES Andrew Mesner's Motion for Default Judgment (ECF No. 16);

(5) The Court DISMISSES Andrew Mesner's Motion for Sanctions (ECF No. 21);

(6) The Court GRANTS Defendants Fidelity Brokerage Services LLC's and FMR LLC's Renewed Motion to Compel Arbitration and Motion to Dismiss the Amended Complaint in Favor of Arbitration (ECF No. 37).

(7) The Court DISMISSES Andrew Mesner's First Amended Complaint (ECF No. 13) without prejudice and STRIKES Andrew Mesner's Second Amended Complaint (ECF No. 25) and Third Amended Complaint (ECF No. 47).

(8) The Court GRANTS Defendants Fidelity Brokerage Services LLC's and FMR LLC's motion to compel arbitration in accordance with the terms of the Fidelity Account Customer Agreement between the Defendants and Andrew Mesner and ORDERS that the arbitration proceed with the Financial Industry Regulatory Authority in accordance with the terms of the Fidelity Account Customer Agreement.

(9) The Court DISMISSES Andrew Mesner's Motion for Default Judgment (ECF No. 41); and

(10)   The Court DENIES Andrew Mesner's Emergency Motion for Temporary Restraining Order (ECF No. 43).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 24th day of October, 2023